**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**Tania Formo,** **Civil Action No. 0:26-cv-02623-JMB-LIB**
**,** **Plaintiff,**

**v.**

**The Lincoln National Life Insurance Company,**

**Defendant.**

**DEFENDANT'S STATEMENT OF THE CASE**

---

Pursuant to the Pretrial Scheduling Notice and Order [Doc. 13] entered by the Court on July 20, 2026, Defendant The Lincoln National Life Insurance Company ( "Lincoln") submits the following Statement of the Case.

**<u>Defendant's Version of the Facts of the Case</u>**

Plaintiff was a Digital Personal Shopper for Walmart, Inc. ("Walmart), whose last day of work was April 15, 2021. Plaintiff submitted a claim for long term disability ("LTD") benefits from the Walmart, Inc. Group Disability Plan (the "Plan") which benefits are insured by a Group Disability Income Policy ("Policy") issued by Lincoln to Walmart.

Plaintiff initially submitted a claim for her absence from work as of April 16, 2021, and received benefits from the Plan beginning October 15, 2021. Plaintiff received benefits from the Plan until October 14, 2023, when her benefits were terminated because she no longer met the Policy's definition of "disabled." During the first 24 months of Plaintiff's claim, to satisfy the definition, Plaintiff must have been unable to perform "all of the Material and Substantial Duties of his Own Occupation." The 24-month period ended on October 14, 2023, and to be eligible to receive benefits after the first 24 months, Plaintiff would have to be unable to perform "the

Material and Substantial Duties of Any Occupation." Plaintiff was advised of the denial of benefits beyond October 14, 2023, via letter dated August 2, 2023.

Lincoln received a letter dated January 28, 2024, from Plaintiff's counsel appealing the denial of Plaintiff's claim for further LTD benefits from the Plan. In support of Plaintiff's appeal for LTD benefits, Plaintiff's counsel submitted a copy of a Workability Certification form signed by Dr. Lance Silverman on August 11, 2023. The document states diagnoses of: causalgia of left lower limb, instability of left ankle, complex regional pain syndrome of left lower limb, sprain of ligament of left ankle, and injury of cutaneous sensory nerve at ankle and foot level.

Dr. Silverman opined that Plaintiff has the following work status:

- Sit down job;
- Walking or standing of less than one hour per day;
- No climbing, squatting, or kneeling;
- No lifting, pushing, or pulling except while sitting;

It was also Dr. Silverman's opinion that Plaintiff has the ability to use her upper extremities while seated, but would be limited to a two day work week consisting of six-hour work days. The Workability Certification did not indicate that it was the opinion of Dr. Silverman that Plaintiff's conditions of chronic regional pain syndrome and chronic pain would affect her ability to concentrate was asserted by Plaintiff's counsel on appeal. No medical records to support Dr. Silverman's opinions as expressed on the Workability Certification were submitted.

Lincoln's appeal review and analysis considered all the medical and claim documentation contained in the administrative record. The last submitted medical record with Dr. Silverman in Plaintiff's file is a telehealth visit dated June 23, 2023. Dr. Silverman's remarks for this visit cite it as a follow-up visit concerning left ankle pain. During the call, Plaintiff reported that her foot remains swollen and standing causes pain. She also reported usage of a brace and cane.

Dr. Silverman recommended that she obtain an MRI, stating "Not consistent with sympathetic nerve troubles as LSB negative and symptoms. Swelling of concern for mechanical issues." As this was a telehealth visit, no actual physical examination was conducted.

Although Plaintiff's counsel had requested an extension to March 15, 2024, to provide additional information to support Plaintiff's appeal, no submission beyond Dr. Silverman's August 11, 2023, Workability Certification (submitted with the appeal) was received by Lincon as of March 15, 2024. Therefore, Plaintiff's file was submitted for clinical review.

The clinical review was completed on March 26, 2024, by a physician, board-certified in pain management and rehabilitation. After a thorough review of the file, the consulting physician found that it contained no objective evidence to support any level of impairment for Plaintiff from October 6, 2023, to the date of his March 26, 2024, report. The report noted that Plaintiff underwent arthroscopic surgery on her left ankle in 2022, with subsequent development of complex regional pain syndrome. The last medical progress note submitted was dated June 23, 2023. As noted by the consulting physician, there are no office visits with Dr. Silverman beyond this date that contain any abnormal physical examination findings. More specifically, the report cited that the file:

> *"lacked updated objective examination findings of, but not limited to, motor weakness, impaired sensation, gait abnormality, instability, and/or positive provocative testing that can be translated into a functional deficit or impairment. Given the insufficient findings, there is no evidence of a functional impairment from the perspective of PMR for the timeframe specified."*

It was the consulting physician's opinion that the existing medical record does not support that Plaintiff's lower back symptoms would be exacerbated with an eight-hour seated work day. Rather, the medical record supports that Plaintiff is able to function, with reasonable continuity in the workplace, on a full-time basis. The consulting physician also did not find that

the medical record supported that Plaintiff's conditions would affect her ability to concentrate for the course of an eight hour work day. A copy of the March 26, 2024, clinical review was sent to Plaintiff's counsel for review and response by April 16, 2024. Plaintiff's counsel then requested, and was granted, an extension to May 7, 2024, to submit a response. As no additional information or response was submitted to Lincoln, Lincoln proceeded with the review of Plaintiff's appeal by obtaining a transferable skills analysis.

Using Plaintiff's training, education, and work history, as well as the work restrictions as outlined by the consulting physician in his March 26, 2024, report, a transferable skills analysis was completed by a vocational rehabilitation counselor. The analysis concluded that the occupations identified in the transferable skills analysis, completed on July 25, 2023, remained viable. Specifically, the following viable occupations are within the restrictions outlined by the consulting physician:

| Occupation | National Bi-weekly Wage |
|---|---|
| Supervisor, Order Takers | $2,360.00 |
| Credit Authorizer | $1,724.00 |
| Telephone Solicitor | $1,193.00 |
| Lost-Charge-Card Clerk | $1,463.00 |
| Credit Card Clerk | $1,463.00 |
| Automobile Locator | $1,269.00 |

A copy of the transferable skills analysis was sent to Plaintiff's counsel on May 10, 2024, for review and submission of any additional documentation for consideration of Plaintiff's appeal, due by June 5, 2024. On June 6, 2024, Plaintiff's counsel requested an extension through July 3, 2024, to provide a response. On June 6, 2024, Lincoln sent a letter to Plaintiff's counsel, advising that prior to consideration of any additional extension, that Plaintiff's counsel advise Lincoln of what information was in the process of being obtained and when it was expected to be received. As of June 13, 2024, Lincoln had received no further communication from Plaintiff's counsel and, therefore, proceeded with the review of Plaintiff's appeal.

Lincoln acknowledges that Plaintiff underwent arthroscopic surgery on her left ankle in 2022, with subsequent development of complex regional pain syndrome. However, no medical office visit notes beyond June 23, 2023, were submitted to support the functional limitations as opined by Dr. Silverman. As advised above, this was a telehealth visit with no physical examination conducted by Dr. Silverman.

Based on the medical documentation in the file as well as the consulting physician's clinical review, there is insufficient evidence to support that Plaintiff is restricted from performing the occupations identified in the transferable skills analysis on a full-time basis. Therefore, Lincoln found that Plaintiff is not prevented from performing Any Occupation.

After a thorough and independent review of Plaintiff's entire claim, Lincoln determined that the medical documentation on file does not contain sufficient physical examination findings, diagnostic test results, or other forms of medical documentation to support that her symptoms and any impairment(s) remained of such severity, frequency, and duration that they resulted in restrictions or limitations rendering her unable to perform the duties of the occupations identified as being within her functional capacity and vocational skills beyond October 14, 2023. Accordingly, Lincoln upheld its decision to terminate Plaintiff's LTD benefits in a letter to Plaintiff's counsel dated June 13, 2024.

**Particularized Facts Which Support Lincoln's Defenses any applicable Statutory Authority**

Plaintiff's claim for benefits arises under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). ERISA claims of this nature are reviewed by the Court under an abuse of discretion standard, when, as is the case here, the plan documents contain language granting discretionary authority to the claim decision-maker. Under the abuse of discretion standard, the claims decision will be reversed "only if it is arbitrary and capricious." *Groves v. Metro. Life*

*Ins. Co.*, 438 F. 3d 872, 874 (8th Cir. 2006) (citing *Hebert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir. 2004)).

In applying an abuse of discretion standard, "we must affirm if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir.2002) (quotation omitted).

**Benefits Calculation**

Plaintiff's salary bi-weekly salary at Walmart was $1,258.19, and her benefit percentage under the plan documents is 60%, which makes her gross bi-weekly benefit $754.91. The Plan benefits would be paid under the Policy until Plaintiff reaches 67 on December 28, 1970, although she may only recover past benefits under this action, along with reinstatement of benefits under the terms of the Plan. As of today, the past due benefits are $52,843.98.

Respectfully submitted,

**LAW OFFICES OF IWANA RADEMAEKERS, P.C.**

By: /s/ Iwana Rademaekers
Iwana Rademaekers (Texas Bar # 16452560)
Admitted *Pro Hac Vice*
17304 Preston Road, Suite 800
Dallas, Texas 75252
Main: (214) 579-9319
Fax: (469) 444-6456
Email: iwana@rademaekerslaw.com

- And –

**LARSON KING, LLP**

By:/s/ *Owen J. Palmer*
Owen J. Palmer (213226)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN 55101
Tel: (651) 312-6500
Fax: (651) 312-6618
opalmer@larsonking.com

ATTORNEYS FOR DEFENDANT THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, District of Minnesota, using the electronic case filing system of the court, and the electronic case filing system sent a “Notice of Electronic Filing” to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means, as follows:

Thomas J. Beedem
tjb3@beedhamlaw.com

Alesia R. Strand
ars@beedemlaw.com

| | |
|---|---|
| August 20, 2026 | /s/ Iwana Rademaekers |
| Date | Iwana Rademaekers |